Pages 1 -

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE PAUL S. GREWAL, MAGISTRATE JUDGE

| | |
|---|---|
| ADAPTIX, INC., | ) Case Nos. |
| | )  CV 13-01776 PSG |
| Plaintiff, | )  CV 13-01777 PSG |
| | )  CV 13-01778 PSG |
| v. | )  CV 13-01844 PSG |
| | )  CV 13-02023 PSG |
| APPLE, INC., et al., | )  CV 14-01259 PSG |
| | )  CV 14-01379 PSG |
| Defendants. | )  CV 14-01380 PSG |
| | )  CV 14-01385 PSG |
| -----------------------------) | CV 14-01386 PSG |
| and related cases. | )  CV 14-01387 PSG |
| _____) | CV 14-02359 PSG |
| | CV 14-02360 PSG |
| San Jose, California | CV 14-02894 PSG |
| Tuesday, September 23, 2014 | CV 14-02895 PSG |
| | CV 14-03112 PSG |

**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING**
**OF PROCEEDINGS**

FTR 5:00 p.m. - 6:06 p.m. =  66 minutes

**APPEARANCES**:

For Plaintiff:          Hayes, Messina, Gilman & Hayes, LLC
                        200 State Street
                        Boston, Massachusetts  02109
                  BY:  **PAUL J. HAYES, ESQ.**
                        **KEVIN GANNON, ESQ.**
                        **MICHAEL ERCOLINI, ESQ.** (by telephone)
                        **JAMES FOSTER, ESQ. (**by telephone)

        (Appearances continued on following page.)

Transcribed by:          Leo T. Mankiewicz, Transcriber
                         leomank@gmail.com
                         (415) 722-7045

APPEARANCES:  (cont.)

For Plaintiff:          Banys, P.C.
                        1032 Elwell Court, Suite 100
                        Palo Alto, California  94303
                  BY:  **CHRISTOPHER D. BANYS, ESQ.**


For Defendants AT&T Mobility LLC and HTC:

                        Akin, Gump, Strauss, Hauer & Feld
                        300 West 6th Street, Suite 1900
                        Austin,Texas  78701
                  BY:  **FRED IRVIN WILLIAMS, ESQ.**


                        Baker Botts LLP
                        1001 Page Mill Road
                        Building One, Suite 200
                        Palo Alto, California  94304-1013
                  BY:  **GINA ANN BIBBY, ESQ.**


                        Cadwalader Wickersham & Taft LLP
                        One World Financial Center
                        New York, New York  10281
                  BY:  **CHRISTOPHER A. HUGHES, ESQ.**


For Defendants AT&T Mobility and HTC America, Inc. :

                        Akin Gump Strauss Hauer Feld LLP
                        1111 Louisiana Street, 44th floor
                        Houston, Texas 77002
                  BY:  **MICHAEL F. REEDER, II, ESQ.**


For Defendant Apple, Inc.:

                        Wilmer, Cutler, Pickering,
                         Hale & Dorr LLP
                        950 Page Mill Road
                        Palo Alto, California  94304
                  BY:  **CRAIG EVAN DAVIS, ESQ.**
                        **MARK DONNELL FLANAGAN, ESQ.**
                        **MARK DANIEL SELWYN, ESQ.**


                        Wilmer, Cutler, Pickering,
                         Hale & Dorr LLP
                        1875 Pennsylvania Avenue, NW
                        Washington, DC  20006
                  BY:  **JONATHAN L. HARDT, ESQ**
                        (by telephone)

APPEARANCES:  (cont.)

For Defendant Apple, Inc.:

                                  Apple, Inc.
                                  250 S. Mathilda Ave MS36-3NYJ
                                  Sunnyvale, California  94086
                  BY:  **SARITA VENKAT, ESQ.**

For Defendant Cellco Partnership dba Verizon Wireless:

                                  Wilmer, Cutler, Pickering,
                                   Hale & Dorr LLP
                                  950 Page Mill Road
                                  Palo Alto, California  94304
                  BY:  **GEOFFREY MARK GODFREY, ESQ.**

For Defendant Dell, Inc.:

                                  Winston & Strawn, LLP
                                  101 California Street
                                  San Francisco, California  94111
                  BY:  **JENNIFER A. GOLINVEAUX, ESQ.**

For Defendant Amazon, Inc.:

                                  Klarquist Sparkman, LLP
                                  One World Trade Center
                                  121 S.W. Salmon Street, 16th floor
                                  Portland, OR  97204
                  BY:  **ROBERT T. CRUZEN, ESQ.**

For Defendant Sony Mobile Communications, Inc.:

                                  Andrews Kurth LLP
                                  4505 Emperor Blvd., Ste. 330
                                  Durham, North Carolina  27703
                  BY:  **JAMES V. MAHON, ESQ.**

                                  Thompson & Knight, LLP
                                  50 California Street, Suite 3325
                                  San Francisco, California  94111
                  BY:  **GLEN TURNER, ESQ.**

APPEARANCES:   (cont.)

For Defendant Blackberry Corporation:

                           Baker Botts LLP
                           2001 Ross Avenue, Suite 600
                           Dallas, Texas 75201-2890
                 BY:  **JOHNSON KUNCHERIA, ESQ.** (by telephone)

                           Baker Botts LLP
                           30 Rockefeller Plaza, 45th floor
                           New York, New York  10112
                 BY:  **JENNIFER C. TEMPESTA, ESQ.**
                     (by telephone)

For Defendants MetroPCS Communications, Inc. and T-Mobile USA
Inc.:

                           Baker Botts LLP
                           2001 Ross Avenue, Suite 600
                           Dallas, Texas 75201-2890
                 BY:  **DOUGLAS KUBEHL, ESQ.**

For Defendant Sprint Spectrum L.P.:

                           Sheppard, Mullin, Richter & Hampton
                           Four Embarcadero Center, 17th floor
                           San Francisco, California  94111
                 BY:  **MOLLY NEWLAND TULLMAN, ESQ.**

                           Rouse Hendricks German May, LLP
                           1201 Walnut, 20th Floor
                           Kansas City, Missouri 64106
                 BY:  **MARK W. McGRORY, ESQ.**

For Defendants ASUSTeK, ATI and AT&T Mobility:

                           Singularity LLP
                           275 Shoreline Drive, Suite 520
                           Redwood Shores, California  94065
                 BY:  **RONALD SCOTT LEMIEUX, ESQ.**

For Defendant Kyocera Communications, Inc.:

                           Quinn, Emanuel, Urquhart, Oliver
                             & Hedges, LLP
                           50 California Street, 22nd floor
                           San Francisco, California  94111
                 BY:  **DAVID EISEMAN, IV, ESQ.**

1    <u>Tuesday, September 23, 2014</u>

2                                                   <u>5:00 p.m.</u>

3                    P R O C E E D I N G S

4          **THE COURT:**  All right, Mr. Rivera, let's turn to the

5    related cases.  Could you please call them?

6          **THE CLERK:**  Yes, your Honor.  Calling Adaptix, Inc.,

7    versus Apple, Inc., et al., case number CV13-1776 PSG and

8    related cases, on for case management conference.

9          Counsel, please state your appearances.

10         **THE COURT:**  I should warn you, I only have about 12

11   chairs, so don't make me start playing music.

12         **UNIDENTIFIED SPEAKER:**  Your Honor, they wind up

13   sitting outside if they settle.

14         **THE COURT:**  All right, why don't we take

15   appearances.  Line them up and start belting it out.  I'll

16   start with -- well, we'll start over here, on the left,

17   plaintiffs.

18         **MR. GANNON:**  Kevin Gannon from Hayes, Messina,

19   Gilman & Hayes, for Adaptix.

20         **MR. HAYES:**  Paul Hayes, your Honor, for the

21   plaintiff.

22         **MR. BANYS:**  Chris Banys for the plaintiff, your

23   Honor.

24         **MR. TURNER:**  Glen Turner, local counsel for Sony

25   Mobile Communications, USA, Inc., and its primary counsel is

1    Jim Mahon.

2            **MR. MAHON:**  Jim Mahon, Andrews Kurth, for Sony

3    Mobile.  Thank you.

4            **MR. McGRORY:**  Mark McGrory for Sprint, your Honor,

5    Rouse Hendricks German May, from Kansas City.

6            **MS. TULLMAN:**  Molly Tullman for Sprint, from

7    Sheppard Mullin.

8            **THE COURT:**  All right.

9            **MS. BIBBY:**  Gina Bibby, Baker Botts, for AT&T.

10           **MS. VENKAT:**  Sarita Venkat, for (inaudible).

11           **MR. WILLIAMS:**  Your Honor, Fred Williams and Michael

12   Reeder for HTC and AT&T.

13           **MR. KUBEHL:**  Doug Kubehl with Baker Botts for AT&T

14   Mobility and T-Mobile.

15           **MR. SELWYN:**  Mark Selwyn and Craig Davis for Apple.

16           **MR. FLANAGAN:**  Good afternoon, your Honor.  Mark

17   Flanagan and Geoff Godfrey for Verizon.

18           **MR. LEMIEUX:**  Ron Lemieux, your Honor, for ASUSTeK,

19   ATI and AT&T mobility.

20           **MR. CRUZEN:**  Rob Cruzen, your Honor, for Amazon.com,

21   Inc.

22           **MR. EISEMAN:**  Your Honor, David Eiseman on behalf of

23   Kyocera.

24           **MS. GOLINVEAUX:**  Jennifer Golinveaux, your Honor, on

25   behalf of Dell.

1          **THE COURT:**  We've already heard from Mr. Godfrey

2    through Mr. Selwyn, I believe, or through Mr. Flanagan, anyway.

3              **MR. DAVIS:**  Mr. Davis with Mr. Selwyn, your Honor.

4          **THE COURT:**  Mr. Davis, good to have you back, as

5    well.

6          All right, and on the telephone, let me just recite

7    the names that I believe are on the line, and ask you to

8    confirm your appearance.

9              Mr. Ercolini, are you there?

10            **MR. ERCOLINI:**  Here, your Honor.

11         **THE COURT:**  All right, good afternoon, or good

12   evening, sir.

13             Mr. Foster?

14         **MR. FOSTER:**  Yes, your Honor, here.

15         **THE COURT:**  All right, Mr. Hughes, are you on line?

16         **MR. HUGHES:**  Yes, your Honor.  Good evening from New

17   York.

18         **THE COURT:**  All right, and we also have

19   Mr. Kuncheria?

20             **MR. KUNCHERIA:**  Present, your Honor.

21         **THE COURT:**  All right, Mr. Hardt?

22         **MR. HARDT:**  Yes, good afternoon, your Honor.

23         **THE COURT:**  Good afternoon.  Ms. Tempesta?

24         **MS. TEMPESTA:**  Yes, your Honor, good afternoon.

25         **THE COURT:**  Welcome.  Have I missed anybody on the

1    phone?  All right, is there anybody else in the courtroom that

2    wants to say hello?  If not, please have a seat.

3            Why don't we get started.  I've done my best --

4    first of all, let me say thank you to all of you for your

5    flexibility.  I am in the middle of a jury trial, and so

6    I appreciate your willingness to accommodate that conflict.

7            I have done my best to prepare for this afternoon by

8    going over each of your joint case management conference

9    statements, in what I'll call the three buckets of cases that

10   seem to be before me this afternoon.

11           My thought is that we first address some of the

12   scheduling issues in what I'll call bucket one, which include

13   the Apple, AT&T Mobility, Verizon cases, and then we can turn

14   to buckets two and three.  I think if we resolve the issues in

15   bucket one, some of the other issues in the other buckets will

16   hopefully be resolved, as well.

17           Turning to bucket one, and for purposes of our

18   record, I will just confirm I'm now referring to cases 13-1776,

19   1777, 1778, 1844 and 2023.  All right, with those cases in

20   mind, let me begin by asking about the first issue on my plate,

21   which is, who's going to trial and when.

22           It seems that I have three proposals in front of me,

23   maybe four.  I have a proposal from Apple, and AT&T and

24   Verizon.  I have an alternative proposal from HTC, and then the

25   plaintiffs have offered two alternatives of their own.  So

1    I think I've got a grand total of four possibilities before me.

2         If I understand all of these different proposals,

3    the plaintiff is in agreement with HTC that it would be

4    preferable to have Apple and HTC try their cases first.

5    I believe plaintiff has indicated that if that's not the

6    preference of the Court, their next proposal would be for the

7    HTC-AT&T case to go first.

8         Alternatively, Apple, I understand, is proposing

9    that it try its case with Verizon after the HTC and AT&T case

10   goes.  In that second wave, there would also be an Apple and

11   AT&T case.

12        So with all of that as background, let me begin with

13   the plaintiffs, and ask, what's the rationale, in your view, to

14   have the Apple and HTC cases go first?  Mr. Hayes, why don't

15   you go ahead, sir.

16        **MR. HAYES:**  Well, the Apple and HTC cases -- I mean,

17   bottom line, Judge, is if you could combine them together, then

18   we could figure out how to do that, irrespective of the law,

19   which is -- could be a concern, but the question is whether --

20        **THE COURT:**  I do tend to give some weight to that

21   every now and then.

22                        (Laughter.)

23        **MR. HAYES:**  Well -- well, right, we could a little

24   bit, but it's the same transaction or occurrence, and I mean,

25   obviously, here, everything stems from a Qualcomm chip.

1  There's no difference in infringement, no difference in

2  validity, and in fact, they all have the same validity expert,

3  and they're basically all saying the same thing, vis-a-vis

4  Qualcomm.

5          We can get rid of four birds with one shot, and

6  I think the only difference in the entire case is just the

7  amount of damages.  Maybe it takes a few more days for the

8  damages, but I think given the fact that it's all we can --

9  I think that the American Invents Act would not apply to

10  prohibit this, simply because these aren't the typical thing

11  where A is doing something a little bit different and B is

12  doing something.  Everybody agrees it's the Qualcomm chip, how

13  does it work, they all use it, they all sell it, and they all,

14  we say, infringe by doing so.  So that's our first thought.

15          Our second thought is that if that doesn't pass

16  muster with you, HTC should go first, and the reason HTC should

17  go first is real simple.  These cases are transferred from

18  Texas.  The HTC case was first filed in Texas in January 13th

19  in 2012, and the Apple case was filed in March 9th, 2012, a few

20  months later, and I think just simply because Apple asked to go

21  first, so what?  In my view, we just follow the rules.

22          **THE COURT:**  All right.

23          **MR. HAYES:**  And so that's basically it, to just get

24  it cranking.  Now, the only thing you should know, and I think

25  to put it bluntly, or put this all in perspective, you've got

1   your trial date set in here for February 9th, which is fine,

2   but we have a trial date on the Adaptix cases in Texas with a

3   pretrial on the 8th.

4           **THE COURT:**  So has Judge Schneider actually set the

5   date of trial on --

6           **MR. HAYES:**  Yes.  He has set the trial date --

7   excuse me.  He set the pretrial date at the 8th, and in his

8   standard order, which we've got a copy if you want to look at

9   it, it says trial will be tried within four weeks, but

10  effectively, the way it works down there is that that pretrial

11  is a bit too much, actually, but the point is, the pretrial

12  will be the 8th, right?  We'll most likely empanel Monday, and

13  then boom, it will be -- it will be over.  I mean, it's going

14  to be over by, you know -- in a week.  He is not going to give

15  us more than a week, particularly if it's just one Qualcomm

16  chip, that's it.

17          So I'm just letting you know that, your Honor, that

18  that's the way it works down in Texas, and that's the scenario

19  that we're all going to have to deal with.

20          **THE COURT:**  I understand, and I appreciate that.

21          **MR. HAYES:**  And otherwise, we're ready to just tee

22  them up and do them.

23          **THE COURT:**  Okay, I think I have your position.

24  I should say, before I turn to the defendants, I may have

25  mischaracterized Apple's preference.  My understanding is

1    actually that Apple prefers to go first with Verizon.

2              Is that right, Mr. Selwyn?

3              **MR. SELWYN:**  That's correct, your Honor.

4              **THE COURT:**  Okay.  Why don't you give me your

5    thoughts, and I'll invite the thoughts of others, as well.

6              **MR. SELWYN:**  Thank you, your Honor.  To date,

7    Adaptix has filed 30 cases involving the patents-in-suit,

8    including what your Honor has called the first bucket of cases

9    for purposes of this hearing.  In each of those cases, the

10   defendants are one handset manufacturer and one carrier, and

11   the infringement allegations relate to the use of a handset on

12   a particular carrier's network.

13             There's a reason that Adaptix has not sued multiple

14   manufacturers and carriers in a single case, and it's because

15   the AIA, and specifically 35 U.S.C. Section 299, forbids it,

16   and here, the accused products in the cases against Apple and

17   the cases against HTC are different, and the factual evidence

18   will be different for the different networks.

19             Adaptix talks about the baseband chip being the

20   same.  Well, that is not all of the evidence.  There's also

21   evidence on the base station side.  The factual evidence that

22   will be presented by the carriers will be different in this

23   situation.

24             So simply put, the AIA's joinder provisions prevent

25   this Court from joining Apple and HTC for purposes of trial

1    absent consent of all the parties.  There would have been no

2    basis for Adaptix to have sued Apple and HTC in the same case

3    originally, and there's no basis today to join Apple and HTC as

4    defendants together.

5           And even putting aside the AIA, there's no

6    procedural mechanism to do what Adaptix has proposed in having

7    Apple and HTC as defendants in a trial.  In essence, they're

8    suggesting that Apple and HTC be severed from their

9    co-defendants in the existing court cases, then joined together

10   as defendants in a new case, a case that doesn't exist, leaving

11   behind AT&T and Verizon, presumably for some unknown number of

12   trials themselves.  And again, even if the Federal Rules

13   permitted this type of maneuver, the AIA does not.

14          There are lots of practical considerations in

15   addition to that for why Apple and HTC should not be tried

16   together.  This case has proceeded through discovery on the

17   assumption that the trials would be a particular

18   manufacturer-carrier pairing.  Had the parties known these

19   pairings would change for trial, the parties likely would have

20   approached discovery differently with respect to one another.

21          Adaptix's complaints in its infringement contentions

22   all allege that each pair of defendants infringed the patents

23   based upon their use of a particular handset manufacturer's

24   products on a particular network, and on that basis, each pair

25   of defendants have served expert reports that address

1    noninfringement from the perspective of use of the accused

2    products on a particular network.  For example, Apple has

3    served separate noninfringement and damages expert reports in

4    the cases involving Verizon and AT&T.

5          At trial, Apple and Verizon as co-defendants and

6    then Apple and AT&T as co-defendants, under what Apple has

7    proposed, expect to present evidence and witnesses that address

8    both the operation of the handset and the operation of the

9    network.  If, as Adaptix has proposed, trial should proceed

10   without the carriers, then Apple would be prejudiced in its

11   ability to present all the evidence that it had been relying

12   would be presented through the witnesses of the carriers.

13         THE COURT:  May I ask you just a couple questions

14   about your proposal, Mr. Selwyn?  First, as I understand it, in

15   Apple's proposal, which is joined by each of the defendants in

16   its bucket other than HTC, as I understand it, there would be

17   first an Apple-Verizon trial in February, correct?

18         MR. SELWYN:  Correct.

19         THE COURT:  And then, if necessary, a second trial

20   involving HTC and AT&T, correct?

21         MR. SELWYN:  That's right.

22         THE COURT:  So would the Apple -- I'm sorry -- would

23   the Apple-AT&T trial be a third trial that trailed the other

24   two?  Is that how you're imagining this?

25         MR. SELWYN:  That's correct, and presumably, after

1    the first two trials, there are going to be estoppel issues

2    that are going to affect the range of issues that could be

3    tried in subsequent trials, if any are left at all.

4              **THE COURT:**  Okay.  The second question I have is,

5    I think you are most persuasive just pointing out the practical

6    implications of one proposal versus another.  You've suggested

7    that if Apple were severed from Verizon, for example, and

8    smashed into HTC in the first trial, that there might be some

9    issues regarding the evidence that would be presented coming

10   from Verizon.

11             What would prevent -- I presume, even if I made you

12   go to trial with HTC and even if I could do that under the

13   section -- under Section 299, you would still have access to

14   witnesses, documents and the like from Verizon, correct?

15             **MR. SELWYN:**  Not necessarily.  They're not with --

16             **THE COURT:**  Tell me why.  What am I missing?

17             **MR. SELWYN:**  Well, they wouldn't be within our

18   subpoena power.  We couldn't compel them to be testifying.

19   I suppose we could use the depositions that have been taken,

20   but we haven't been proceeding on discovery on the basis that

21   we would have to use deposition testimony at trial.  We

22   certainly didn't question witnesses, because our assumption was

23   those witnesses would be available at trial, based upon the

24   pairings selected by Adaptix.

25             **THE COURT:**  All right.  And am I correct in

1   understanding that among the defendants, HTC is the only one

2   who disagrees with your proposal, at least in this bucket?

3            **MR. SELWYN:**  That's correct.

4            **THE COURT:**  Okay, well, perhaps I might turn to HTC.

5   I'm looking for you, Mr. Williams.

6            Thank you, Mr. Selwyn.

7            **MR. HAYES:**  Excuse me, your Honor.  I think you

8   might have mis- -- I hate to interrupt, but --

9            **THE COURT:**  Go ahead, sir.

10           **MR. HAYES:**  -- you might have misunderstood a little

11   bit about our proposal.

12           **THE COURT:**  Okay.

13           **MR. HAYES:**  But we did not propose to exclude from

14   this first trial the carriers, at all.

15           **THE COURT:**  So you would include Verizon, for

16   example --

17           **MR. HAYES:**  Of course --

18           **THE COURT:**  -- and AT&T in that first trial.

19           **MR. HAYES:**  -- because Verizon and AT&T are the same

20   carriers that everybody uses.

21           **THE COURT:**  So there would actually be four

22   defendants in that first trial, is what you're telling me.

23           **MR. HAYES:**  Well, yeah, you'd have Verizon, AT&T,

24   HTC and Apple, and so anybody can use any witnesses, any

25   documents, whatever that log, they're all going to be here, in

1    one shot, so off we go, and the notion that the base station is

2    some type of critical difference, these patents are handset

3    patents, which I'm sure you're well aware of, and the base

4    station -- all the base station is telling the handset is just

5    to record in Mode 3, and then boom, the Qualcomm chip does it.

6         I mean, so it is what it is.  It's not, you know --

7    so what?

8         **THE COURT:**  I appreciate that clarification.  Maybe

9    I misunderstood.  I understood that the plaintiff was signing

10   on to the HTC proposal and I had understood from HTC that they

11   were proposing to exclude the carriers from that first trial,

12   so...

13        **MR. HAYES:**  I think you're exactly correct, and

14   I think what happened is, I think when I was asked what are we

15   going to do here, I misunderstood -- I didn't catch, frankly,

16   that they excluded the carriers.

17        So my thought is -- my thought is, I'd rather have a

18   two-week trial, boom, for everybody, all the documents are

19   here, everything's here, there's one chip, and boom, we're out

20   of here.

21        **THE COURT:**  All right.  Well, Mr. Williams, we're

22   talking about your proposal, so why don't you tell us what you

23   meant.

24        **MR. WILLIAMS:**  Your Honor, I would say --

25        **THE COURT:**  And what you said, actually.

1        **MR. WILLIAMS:**  -- HTC's proposal originally was to

2    have a manufacturer-only trial first.

3        **THE COURT:**  Okay.

4        **MR. WILLIAMS:**  And our interest was definitely in

5    efficiency.  Having reviewed the law since we made our filing

6    last week, I agree with Mr. Selwyn's assessment of the AIA, and

7    I think Mr. Hayes conceded the same when he started and said,

8    if we can do this without regard for the law --

9        **THE COURT:**  So are you now jumping on to the Apple,

10   et al., bandwagon?

11       **MR. WILLIAMS:**  Not exactly, your Honor.

12       **THE COURT:**  Okay, tell me what you'd like to do.

13       **MR. WILLIAMS:**  HTC would like to go to trial first.

14       **THE COURT:**  Okay.

15       **MR. WILLIAMS:**  I understand that AT&T may not be as

16   available for trial in February because of the Texas setting.

17   I can't speak for Verizon, but HTC would really like to be in

18   the first trial, and they're happy to do so with whatever

19   co-defendants are available, or no co-defendants.

20       **THE COURT:**  Okay.  I think I have your proposal.

21   And may I ask, Mr. Williams, I think you had suggested

22   somewhere in the statement that you were seeking some relief or

23   proposing to seek some relief from Judge Schneider?

24       **MR. WILLIAMS:**  So AT&T is --

25       **THE COURT:**  Oh, that's AT&T, I'm sorry.

1      **MR. WILLIAMS:** -- your Honor, and I'm really kind of

2  speaking for HTC today, and Mr. Kubehl is prepared to address

3  the issues for AT&T.

4      **THE COURT:** Okay.

5      All right, well, Mr. Kubehl, perhaps you might just

6  address this piece.

7      **MR. KUBEHL:** Thanks, your Honor.  AT&T is uniquely

8  situated here, because it's the defendant that faces two

9  potentially overlapping trials, and you heard from Mr. Hayes

10  that in Texas they have the pretrial conference and then they

11  line you up for a trial, and we could have any number of trials

12  set for that pretrial conference.  There's no guarantee that

13  the Adaptix case gets to go first.

14      So AT&T is in a position where its witnesses, some

15  of them are fairly high up corporate witnesses, could be asked

16  to either be in a conflicting situation between the two

17  jurisdictions or trying to shuttle between the two

18  jurisdictions, at the very least having back-to-back trials,

19  and faced with these high corporate witnesses, you know, having

20  to take many weeks out of their lives instead of hopefully

21  resolving it in one court or if not, maybe down the road

22  catching another case.

23      **THE COURT:** May I ask, Mr. Kubehl, do you happen to

24  know, as Judge Schneider's schedule currently stands, are there

25  other non-Adaptix cases that are positioned for trial in that

1    same four-week window?

2           **MR. KUBEHL:**  I don't know the answer to how many

3    there are.  I can say that I am on another case with Judge

4    Schneider that was set for trial this fall and he's moved that

5    back, because he does have a pretty heavy load right now.

6           So from the AT&T side of things, we are in favor of

7    the Apple-Verizon case going first, because that alleviates the

8    stress of having the conflicting cases for us.

9           We are not in favor of the one large trial with all

10   the defendants.  As Mr. Selwyn pointed out, we didn't prosecute

11   this case assuming that we would have to get any discovery from

12   Verizon.  We would have to know what their confidential

13   documents say.  AT&T and Verizon are competitors with one

14   another, and did not anticipate that they'd be in a trial where

15   they'd have to face each other's documents.  We're in a

16   situation now where if it was one large trial, there would be

17   many Verizon documents, HTC documents, that I frankly have

18   never seen and I'd have to face those in trial and would not be

19   equipped to answer them.

20           **THE COURT:**  All right.  Thank you, Mr. Kubehl.

21           Does anybody else want to be heard on this issue?

22           **MR. FLANAGAN:**  Just briefly, your Honor --

23           **THE COURT:**  Of course.

24           **MR. FLANAGAN:**  -- for Verizon.  We agree with

25   Mr. Kubehl.  I guess the only thing I'd add, apart from just

1    echoing his comments, is that if you put AT&T and Verizon

2    together in one trial, I think -- we think that there's a

3    strong likelihood of jury confusion.  For example, while we

4    don't know the details of AT&T's configuration, we do

5    understand that networks are differently configured, and if

6    you're going to have two handset manufacturers, two carriers,

7    it's going to be a lot to manage.

8            As between AT&T and Verizon, AT&T and Apple agree,

9    and Verizon agrees, that the best configuration is Apple and

10   Verizon, and I guess the only thing I'd add to that is that

11   since the same firm is representing Verizon and Apple, we think

12   that that will alleviate many of the sort of inherent

13   inefficiencies of a multi-party case.

14           **THE COURT:**  All right.  One question for you, if

15   I could.  Let me just put out there, I have a hard time getting

16   my head around having two or more defendants at trial together

17   that don't want to be there, in light of Section 299.  So even

18   though I have my own issues with Section 299, I'll save that

19   for my article.  I'm kind of constrained here.

20           As I understand what Adaptix is saying, though,

21   they're pointing to the fact that, all things being equal, the

22   HTC case -- the HTC-AT&T case was filed first, and so if

23   they're going to be stuck with a manufacturer and carrier case

24   as the first case, why wouldn't be only fair to say, they filed

25   that one first, that's the case that ought to go first?

1          **MR. FLANAGAN:**  Yeah, I mean, we thought about that,

2     your Honor, and, you know, frankly, we don't think it's

3     relevant.  You could also say that the Apple case in this court

4     is the low-numbered case, and so under those rules, it would go

5     first.

6          But we don't think any of that's relevant.  Quite

7     honestly, all of these cases in the wave one set of cases have

8     been tried -- have been litigated in parallel.  So effectively,

9     there's no priority to any of the cases.  The dates have been

10    consistent, certainly in this court, but even when we were in

11    Texas, it's all the same schedule.  So there's really no

12    distinguishing between, this would have to be filed a month

13    earlier or this one was low-numbered.

14          **THE COURT:**  All right.  Thank you.

15          **MR. FLANAGAN:**  Thank you.

16          **THE COURT:**  Mr. Hayes, am I correct in

17    understanding, sir, your position that if we're going to do a

18    one manufacturer, one carrier case, you would rely upon the

19    fact that you filed suit against HTC and AT&T first and that's

20    the case that ought to go first?

21          **MR. HAYES:**  Yes, I mean, I think that basically

22    that's the -- I have not heard from anybody why somehow we

23    should magically try Apple as opposed to HTC first, there's

24    some benefit.  The benefits seem to be even across the board.

25    They were first filed.  First, I think, should be first filed,

1   first tried, and the comment that I could have to my brother

2   about trying to distinguish the carriers, this is not patents

3   on the network of the carrier.  This is the phone.  All the

4   phone does is get a signal saying, do transmission Mode 3.

5   I mean, report, right?

6            They all admit that both carriers send that out.

7   That's it.  That's the only relevant fact.  I don't care if

8   AT&T has 400 towers here or whatever, that's it.

9            So I think, if you look at the claim, that's all

10  I have to establish with them, and your Honor, none of the

11  secrets of either one -- I think this whole secrets that

12  they're trying to do on this is basically, with all due

13  respect, what they're trying to say is, gee, you know, AT&T's

14  got a lot of good admissions in their publications and stuff,

15  and Verizon's got a lot of good admissions and, you know, we

16  don't want to have both people admitting the same thing, that

17  might not look good.  That's the motive behind the trial tack.

18  It's a good one, but I don't think it should hold water,

19  frankly.

20            **THE COURT:**  Can I ask you, Mr. Hayes, I appreciate

21  that Judge Schneider has not yet fixed a date, but he has made

22  it pretty clear, as you pointed out, these cases are going to

23  go in some window absent some extraordinary turn of events.

24            And so it would seem to me, if I understand it

25  correctly, if AT&T and/or HTC are the only cases that are

1    subject to a conflict in light of what Judge Schneider proposes

2    to do, why shouldn't I help my senior colleague out by taking

3    that conflict off the table and starting with the Apple and

4    Verizon case?  What are your thoughts about that?

5            **MR. HAYES:**  I mean, I don't think there's any

6    conflict at all with respect to trying the Texas case first.

7    Texas case first is just -- it's LG.  It's LG versus -- who is

8    it?

9            **UNIDENTIFIED SPEAKER:**  AT&T.

10           **MR. HAYES:**  AT&T, LG, that's it.  Verizon's not in

11   the Texas case.

12           **THE COURT:**  Right.  So what I'm asking about, sir,

13   is, as to AT&T, as I understand what Mr. Kubehl has just

14   pointed out, AT&T right now is looking at a trial in Texas

15   right on top of the first trial in this court.

16           Why wouldn't -- out of, you know, why wouldn't it

17   make good sense, just out of comity, if nothing else, for me to

18   say, you know what, I normally am going to look at the first

19   filed case and set AT&T along with HTC as the first trial, but

20   because AT&T is already designated to go to trial in front of

21   Judge Schneider at that same time, we're going to start with

22   Verizon and we're going to start with Apple?

23           What are your thoughts about that?

24           **MR. HAYES:**  I don't know how, really -- I don't know

25   how it makes any -- with all due respect, any sense, because

1    what are we talking about?  AT&T's going to show up in Texas,

2    it's going to be -- it's only a four-day trial.  I mean, in

3    Texas, they -- you know, it's over before it starts, and --

4              **THE COURT:**  That's certainly how I felt.

5    (Laughter).

6              **MR. HAYES:**  Right.  Well, that's -- sometimes that's

7    the way, a lot of these --

8              **THE COURT:**  And I admire their efficiency.  Frankly,

9    I wonder sometimes why I can't try a case in four days, but in

10   any event...

11             **MR. HAYES:**  Well, you ought to go up to Boston in

12   front of Judge Young.

13             **THE COURT:**  I've had that experience, too.

14   I understand, yeah.

15             **MR. HAYES:**  He told me once, he said, "Hayes, you

16   can cross-examine three experts in 24 minutes and waive your

17   closing, or go for -- just shot in the crosses."  So I get one

18   question per expert, if I want a closing.

19             **THE COURT:**  He'd also make you defend your

20   invalidity case first, right?

21             **MR. HAYES:**  That's -- he used to do it, and then

22   everybody insists --

23             **THE COURT:**  My information and experience may be

24   dated.

25             **MR. HAYES:**  No, no, no.  No, he did, he did, and

1    then everybody was screaming and yelling at that one because of

2    the conflicts, to a point where I think he's throwing his hands

3    up and said, ah, we'll do it the old-fashioned way, and just

4    tee them up and go do it.

5          But I mean, I don't see why AT&T -- I mean, we're

6    not talking about bringing in the President of AT&T and all

7    these executives.  We're talking about someone's going to be a

8    AT&T -- just, whatever it is, and the big -- and it's basically

9    their experts.  And their experts -- their experts on validity

10   are all the same, and so I don't think -- I think there's so

11   much, I don't think -- I think there's a lot of smoke and not a

12   lot of meat on the bone to my brother's argument.

13         **THE COURT:**  All right.  If anybody wants to offer

14   any last points on this, we've got a lot to cover.  Any last

15   points here?  No?  Okay.

16         Well, because I -- well, let me say this.  I don't

17   think under Section 299 I can try multiple defendants, so even

18   though I'm tempted, I don't think I can do that, so I won't do

19   that.

20         I do think that given the positions of the parties

21   here, my choices are to try either the manufacturers together

22   or a plaintiff and a carrier as a first case, and on balance,

23   I'm persuaded that my only option, again, under Section 299, is

24   to accede to whatever the defendants are willing to consent to

25   short of having everybody getting their own trial.

1          The bottom line is, I'm going to try the Apple and

2     Verizon case first.  I'm then going to turn to HTC and AT&T,

3     and finally, to the extent necessary, Apple and AT&T.  I think

4     on balance, this -- it's the best way to avoid any conflicts

5     with Judge Schneider's calendar and to get everybody to trial

6     as soon as we can.

7          Let's turn next in this first wave or bucket to the

8     issue of -- one issue that I wanted to address, which is the

9     2023 case.  I think in a footnote somewhere, someone mentioned

10    that these cases -- that case is now overlapping entirely with,

11    I believe it's the 1777 case?

12         **MR. GANNON:**  That's right.

13         **THE COURT:**  Okay.  May I ask, Mr. Hayes, or any of

14    your colleagues, have you had a chance to consider, do we Ned

15    to keep the 2023 case around, or --

16         **MR. GANNON:**  Yes, your Honor.

17         **THE COURT:**  Tell me why.

18         **MR. GANNON:**  The 2023 would be the case we keep, and

19    we have to look into it a little bit more, but the 1777 case

20    would be the one we drop.  I think the accused products in the

21    2023 case is the most up-to-date.

22         **THE COURT:**  Okay, well, for what it's worth, I don't

23    particularly care which one we keep and which one we drop.  I'm

24    just looking to shorten the caption page --

25         **MR. GANNON:**  Absolutely.

1        **THE COURT:**  -- and take it off of my list.  So if

2    there's any further discussion you had, I'm willing to give you

3    a chance to talk it through, but it seems we're all in

4    agreement there should be one of those cases, not two, is

5    that --

6        **MR. GANNON:**  Yeah, we could do it offline, your

7    Honor.  We could --

8        **THE COURT:**  What do you think, Mr. Selwyn?

9        **MR. SELWYN:**  We agree that it should be one case,

10   not two.  I think we can talk about it offline.  It's just the

11   first I've heard at this point, but we can dress it out.

12       **THE COURT:**  Why don't you see if you can work it out

13   and let me know, and see if you can get a stipulation, whatever

14   you want to do, on file within a week, just so I can keep my

15   docket in some order.

16          As far as the pretrial schedule in the first wave or

17   first bucket of cases, as I understand it, the parties have

18   agreed in Exhibit A to their statement to a schedule.  Is that

19   right?  Are you all on the same page, here, or is this just a

20   proposal from the defendants?

21       **UNIDENTIFIED SPEAKER:**  I believe the defendants made

22   a proposal and Adaptix indicated it was generally in agreement,

23   but they didn't offer any different proposal.

24       **THE COURT:**  Okay.  Is that correct?

25       **UNIDENTIFIED SPEAKER:**  Yes, your Honor.

1    **THE COURT:**  Okay, then I'm going to adopt the two

2    schedules that are proposed.  As I understand it, the one is to

3    the case -- the Apple-Verizon case that will be tried in

4    February, and the other applies to the remaining cases.

5    The one outstanding issue that I have marked in my

6    notes is when we're going to have a hearing on the dispositive

7    and *Daubert* motions in the Apple-Verizon case.  The proposal

8    sets out a November 4th date for that hearing.

9    Mr. Rivera, since you have control of the calendar,

10   as always, can you just confirm, am I available for a hearing

11   on that date, on the 4th?

12   **THE CLERK:**  Yes, your Honor.  Tuesday, November 4th

13   at 10:00 a.m. is available.

14   **THE COURT:**  Okay.  Since I have a number of other

15   matters scheduled on the 4th, I'd like to set this specially in

16   the afternoon, so that I can give you the time that's required

17   to get it right.

18   Mr. Williams, you're standing.

19   **MR. WILLIAMS:**  Sorry, your Honor.

20   **THE COURT:**  Go ahead.

21   **MR. WILLIAMS:**  You said that would be in the

22   Apple-Verizon case, or would that be in all the first wave

23   cases?

24   **THE COURT:**  I'm sorry, that would be in all of the

25   first wave cases.  I think I conflated those two.  So let's go

1   ahead and set this for -- I will adopt the two schedules that

2   are laid out in the proposal in the statement, and we'll

3   confirm November 4th at 1:00 o'clock as the start time for that

4   hearing, and I understand there are perhaps a number of motions

5   to be filed.

6           The only other scheduling issue, I just want to

7   confirm with everybody here, is, what are we going to do about

8   the second trial?  I suppose we can put out of mind for a

9   moment the third trial and assume something's going to happen

10  in the first or the second that might affect it, but you all

11  have proposed a May 4th, 2015 date for the second trial,

12  correct?  Is that right?  Okay.

13          Mr. Rivera, can you just confirm, am I available for

14  trial that day?

15          **THE CLERK:**  Your Honor, you presently have another

16  trial scheduled for that date.

17          **THE COURT:**  Just remind me what case that is,

18  Mr. Rivera.

19          **THE CLERK:**  BMO Harris Bank versus Bono (phonetic).

20          **THE COURT:**  Well, as I look at my calendar -- no,

21  I'm not going to play calendar guessing-games with you all

22  here.  Why don't I take a look at my own schedule.  I'm going

23  to do my best to get you a trial date as close to the 4th for

24  that second trial as I can, and I'll get that posted in a

25  matter of a day, tops, because we need to get everybody,

1    obviously, prepared.  But it will be around the 4th, give or

2    take a few weeks.  It's just, my trial schedule's pretty jammed

3    already for 2015.

4              Okay, unless there's anything else on wave one --

5    Mr. Selwyn, anything else on wave one?

6              **MR. SELWYN:**  Nothing, your Honor.

7              **THE COURT:**  Why don't we turn to wave two, and for

8    wave two, I am referring to the Dell, Blackberry, Amazon, Sony,

9    and ASUSTeK cases.  If I could, let me just march through my

10   issues and I'll invite you all to raise any other issues that

11   you have.

12             The first question I have is whether or not each of

13   the named defendants has been served.  There seemed to be some

14   open question about that in the statement.  Are there any

15   outstanding defendants that you all -- I'm looking at the

16   plaintiffs, of course -- have not yet served but anticipate

17   serving, or is everybody served, as far as you know?

18             **MR. HAYES:**  I don't know, but the person that would

19   know is Mr. Ercolini, who's on the phone, would know much more

20   about that than I.

21             **THE COURT:**  All right, I'll invite input from

22   anybody on the phone.

23             **MR. HAYES:**  Mike, do you know the answer to that

24   question?

25             **MR. ERCOLINI:**  Sorry, whether or not all defendants

1    have been served with infringement contentions?

2            **MR. HAYES:**  No, no, no, served --

3            **THE COURT:**  Service of process.

4            **MR. ERCOLINI:**  Right.

5            **THE COURT:**  What I'm asking you about is, on page --

6            **MR. ERCOLINI:**  I'm sorry.

7            **THE COURT:**  I'm sorry, let me just give you some

8    context for my question.  In section one of the statement

9    pertaining to this wave two set of cases, there's a reference

10   on page 3 to service, and there's a reference to a footnote

11   4 -- I'm not sure where that footnote is -- that suggests that

12   less than all of the defendants have been served.

13            Is it correct that all the defendants have been

14   served or is there one or more defendant in this wave that is

15   still outstanding?

16           **MR. ERCOLINI:**  Our understanding, your Honor, is

17   that all defendants have been served.  I'm not sure which

18   defendant that footnote refers to.  The only one I think that

19   may be the issue would be ASUSTeK, but I believe that complaint

20   has been served, as well.

21           **THE COURT:**  Okay, Mr. Lemieux?

22           **MR. LEMIEUX:**  Service has been perfected, your

23   Honor.

24           **THE COURT:**  Okay, thank you for confirming that.

25   I'm sorry to make that so complicated.

1          All right.  Well, with service taken care of -- bear

2     with me for a moment -- all right.  The next question I had in

3     this wave was, in the statement, the parties have suggested

4     there's a brewing dispute or potential dispute around leave for

5     Adaptix to amend, I believe, its infringement contentions,

6     perhaps to either name new products or to add new theories.

7          Let me just ask, is there a dispute about that, and

8     if so, what's the dispute?  I'm just looking to head off

9     another round of motions, if I could.

10         **MR. GANNON:**  Yes, your Honor, Adaptix would like to

11    seek leave to amend its infringement contentions, similar to

12    what we tried to do in the first round of cases.  We feel it's

13    appropriate here, because it's so early, there's been no

14    discovery, nothing's really happened.  To the extent that the

15    defendants need more time to re-serve their invalidity

16    contentions --

17         **THE COURT:**  You'd have no problem with that?

18         **MR. GANNON:**  -- no problem with that, or if any

19    other deadlines need to get pushed off, we're fine with that,

20    as well.

21         **THE COURT:**  Can I just ask, in this second wave of

22    cases, at least some of the cases were originally filed in the

23    Eastern District, correct?

24         **MR. GANNON:**  Exactly.

25         **THE COURT:**  Okay, and as I understand the procedural

1   history, if I've got this right, in those cases, there were

2   what they call down there preliminary infringement contentions

3   served?

4          **MR. GANNON:**  Yes, your Honor.

5          **THE COURT:**  Okay, so you're looking to amend those

6   contentions.  Roughly speaking, Mr. Gannon, when were those

7   preliminary contentions served?  I'm not going to hold you to

8   it, but are we talking about a few months ago, a year ago?

9          **MR. GANNON:**  I want to say February of this year,

10  your Honor.

11         **THE COURT:**  Okay, so several months ago.

12         **MR. GANNON:**  Several months ago.

13         **THE COURT:**  If you're wrong about the precise date,

14  I'm sure they'll correct --

15         **MR. GANNON:**  February-March.

16         **THE COURT:**  Okay.  All right, well, let me ask one

17  or more of the defendants to address this issue.  Again,

18  I don't have a motion before me yet, but I just wanted to get a

19  sense of what the dispute is.

20         **MR. CRUZEN:**  Your Honor, I drew the short stick, so

21  I'll speak on behalf of Amazon --

22         **THE COURT:**  Go ahead.

23         **MR. CRUZEN:**  -- and also on behalf of the other

24  defendants in the bucket two cases, and our position is that

25  Adaptix has not been diligent in seeking to amend.  Counsel's

1    correct that preliminary infringement contentions were served

2    in February.  We're now seven months down the road.  They

3    sought to add this theory in the earlier wave of cases.  The

4    Court denied that attempt, because they hadn't been diligent.

5    That was a couple months ago, and they still haven't filed

6    their motion to amend their infringement contentions.

7           We don't think you even need to reach the issues of

8    prejudice, but several things have happened since they served

9    their preliminary infringement contentions.  We served

10   invalidity contentions based on the way they framed their

11   theories.  We proposed preliminary claim construction terms and

12   we actually proposed preliminary claim constructions, all based

13   on their original theory.

14          Furthermore, their deadline to serve inter partes

15   review petitions has passed.  Parties made strategic decisions

16   about whether to seek that or not.  In fact, two parties have

17   filed IPR petitions based on the way they had couched their

18   theories originally.

19          So we think, both for reasons of their failure to be

20   diligent in seeking to amend and the prejudice that we would

21   suffer, the Court should deny a motion, if it isn't filed, and

22   we will oppose it if it is filed.

23          THE COURT:  All right.  Well, at the very -- again,

24   thank you.  At the very least, it sounds like there's a dispute

25   here, and so to the extent Adaptix wishes to amend, I suppose

1   it has to bring a motion to do that, so I'll look for that.

2   I just thought I'd touch the issue while you were all here.

3           And I also took from counsel's comments that my work

4   in claim construction is not yet done.   Sure, why not?

5   (Laughter).

6           Okay, all right.   Could I also just ask another

7   management question?   In the statement in the wave two cases,

8   or bucket two cases -- we'll call them wave two cases, and

9   leave it at that -- there was a reference to the parties

10  hashing out an ESI order of some kind.   Have you made any

11  further progress on that, or when would you expect that to be

12  filed?   I just wanted to make sure that that wasn't ignored.

13          I'm seeing a lot of blank faces, so I'm guessing you

14  haven't yet had a chance to have a meaningful conversation.   Is

15  that fair?   I'm not criticizing --

16          **UNIDENTIFIED SPEAKER:**   I don't believe so.

17          **THE COURT:**   -- you know, I'm just trying to figure

18  out what's going on.

19          **UNIDENTIFIED SPEAKER:**   Your Honor, I believe the

20  parties have exchanged drafts.

21          **THE COURT:**   Okay.

22          **UNIDENTIFIED SPEAKER:**   They just haven't finalized

23  the draft.

24          **THE COURT:**   Well, I'm not going to set a hard

25  deadline for it.   I would just ask that -- well, no, I am going

1    to set a hard deadline for it.  Why don't we say that no later

2    than four weeks from today, the parties should submit either a

3    joint proposed ESI order or competing proposals.  I just don't

4    want to see that lag, and things tend to fall by the wayside as

5    we get busy with other things.  So if we could set that for

6    four weeks from today, I'd appreciate it.

7             The next item of business has to do with the

8    discovery.  It seems that when we're talking about depositions,

9    RFAs and all that, the parties have some -- and expert

10   depositions, some pretty different views about scope and

11   volume.

12            Mr. Gannon, I'm turning to you first, I suppose --

13            **MR. GANNON:**  Yes, your Honor.

14            **THE COURT:**  -- because you're closest to me.  What

15   do you have in mind?  It seems like everybody agrees that some

16   number of hours is going to be required, but you can't figure

17   out how to reach common ground on exactly what you need.  So

18   why don't you tell me what you think.

19            **MR. GANNON:**  Basically, with respect to Adaptix

20   witnesses, they've already been deposed a few times across the

21   first wave of cases in the Texas cases, and the parties have

22   agreed that that deposition testimony can be reused in these

23   cases.

24            **THE COURT:**  And when you say the Texas cases, I just

25   want to be as precise as I can, because there's all sorts of

```
 1   cases floating around.  You're now referring in this context to
 2   the base station cases, which remain in Texas?
 3           MR. GANNON:  And there is one, the LG.
 4           THE COURT:  And the one LG handset case.
 5           MR. GANNON:  And there's a Pantech, but we don't --
 6   there's three cases that are -- three handset cases that are
 7   currently pending in Texas.
 8           THE COURT:  All right.  In any event, what you're
 9   telling me is, one thing you've been able to agree on is, all
10   the depositions of your people in any of these cases is fair
11   game in these cases.
12           MR. GANNON:  Exactly.
13           THE COURT:  Okay.
14           MR. GANNON:  And just to be more up front, there are
15   some -- a second wave of Texas handset cases, as well, Huawei,
16   ZTE, NEC Casio, we have a number of others.  So --
17           THE COURT:  Am I going to guess that they're going
18   to be moving to transfer some or all of those cases up here?
19           MR. GANNON:  No, I think the transfers are over,
20   your Honor.
21           THE COURT:  Okay, all right.  I thought I'd ask.
22           MR. HAYES:  They feel lucky, take it.
23                       (Laughter.)
24           THE COURT:  Okay.  In any event, you were saying
25   that -- I take it your view is, look, we've all agreed, all of
```

1    these transcripts in all of these other cases are fair game in

2    this case; do we really need to do more here?

3              **MR. GANNON:**  Exactly, and I believe that the

4    May 16th -- the previous CMC that was held, the defendants made

5    the argument that these are new products and everything else.

6    That's all well and good, but the Adaptix witnesses are

7    testifying about Adaptix and they've already given the

8    testimony.

9              So absent -- I believe your Honor made the statement

10   that absent a showing of good cause for additional deposition

11   time with the witnesses that were previously deposed in the

12   first round of cases, then they won't be fair game.

13             **THE COURT:**  By the way, since you brought up the May

14   CMC, I take it I still haven't issued that scheduling order,

15   have I?

16             **MR. GANNON:**  Exactly, you have not.

17             **THE COURT:**  So I need to get that out.  Okay,

18   I will -- I apologize for that, but for the record, it has been

19   sufficient to move the cases along up until this point.

20             **MR. GANNON:**  Actually, on that point, your Honor --

21             **THE COURT:**  Yes.

22             **MR. GANNON:**  -- I believe the reason why the order

23   was never issued was, there was the intention of the Court to

24   align the second and third wave of cases, and that's why

25   everything has been effectively stayed since the CMC that was

1   held on May 16th.

2            THE COURT:  Okay.  Well, I suppose we'll get to the

3   actual schedule in a moment, but in terms of your proposal,

4   what you're saying, then, is when it comes to the defendants,

5   you're proposing to take about 150 hours of deposition, with no

6   more than 50 of any one defendant?

7            MR. GANNON:  Yeah, for all defendants, and there's

8   numerous defendants.  I mean, we won't even come close to

9   hitting that mark.

10            THE COURT:  Okay, and then you're offering to give

11   up 75 hours of depositions of your people.

12            MR. GANNON:  To the extent they need additional

13   testimony.

14            THE COURT:  Okay, and can I ask you, Mr. Gannon,

15   just to refresh my memory, in the wave one cases, what limits

16   did the Court ultimately settle on?  I should know this, but --

17            MR. GANNON:  I believe it was the four, 150.

18            THE COURT:  150 --

19            MR. GANNON:  I don't recall, that, unfortunately --

20            THE COURT:  Okay.  Can I just ask, as a matter of

21   fairness in concept and consistency, whatever it is I did in

22   the wave one cases, is there any reason why I shouldn't just do

23   the same thing here?

24            MR. GANNON:  Because these witnesses have already

25   been deposed.

1        **THE COURT:**  Okay, so you would suggest that, at

2   least as to any parties that are overlapping, and that's of

3   course primarily Adaptix --

4        **MR. GANNON:**  If there's any additional -- any

5   additional witnesses that pop up they feel they need testimony

6   from, we're open to meet and confer with -- conferring with

7   defendants and allowing them to take whatever they need.

8        **THE COURT:**  One last question for you, Mr. Gannon,

9   before I turn to defendants on this issue of discovery limits.

10       I'm curious.  So if my memory is correct and

11  consistent with what you just told me, I ordered 150 hours a

12  side, I think, or something like that, in the '481 case?  Did

13  you all end up using all 150 hours a side?

14       **MR. GANNON:**  We're not even close, I don't think.

15       **THE COURT:**  Okay.

16       **MR. GANNON:**  I could be wrong.

17       **THE COURT:**  Okay.  I appreciate that.  Well, he'll

18  correct me if you're wrong about that, but I appreciate the

19  representation.

20       **MR. GANNON:**  And one final issue?

21       **THE COURT:**  Yes.

22       **MR. GANNON:**  With respect to the Adaptix witnesses,

23  the inventor, Dr. Liu, who's already been deposed I believe for

24  three or four days already -- and again, he's similarly

25  situated to a regular Adaptix employee -- to the extent --

1    we're okay with allowing these defendants to take another five

2    hours at most of him, but it's -- at this point, it's

3    borderline harassment.

4              **THE COURT:**  Can I ask, Mr. Gannon, just so I have it

5    straight, Dr. Liu, is he currently an Adaptix employee?

6              **MR. GANNON:**  He's not.

7              **THE COURT:**  Okay.  So you're just pointing out,

8    though, that his status is similar, if not identical.

9              **MR. GANNON:**  He's been taken numerous times, and --

10             **THE COURT:**  He's been taken to the woodshed enough,

11   okay.

12             **MR. GANNON:**  Yeah.

13             **THE COURT:**  Okay.  All right.  Who wants to speak on

14   this one?

15             **MR. CRUZEN:**  I will speak, your Honor.

16             **THE COURT:**  Okay, go ahead.  Go ahead.

17             **MR. CRUZEN:**  If I could just address that last

18   issue --

19             **THE COURT:**  Sure.

20             **MR. CRUZEN:**  -- first, with regard to Dr. Liu, at

21   the last case management conference, Adaptix made a proposal

22   that the defendants collectively be limited to 12 hours per

23   inventor, and there were four inventors.  We agreed to that, if

24   we could use the prior inventor testimony in our case for any

25   purpose, and the Court found that acceptable, asked Mr.

1    Ercolini, who was on the phone, if he agreed to that, and he

2    agreed to it.  I have a copy of the transcript, if you'd like

3    to see it.

4              So we think that issue has been resolved, and we're

5    not aware of anything that's changed for Dr. Liu or why he

6    should be treated differently.

7              **THE COURT:**  So again, I apologize, I've been in

8    trial all day --

9              **MR. CRUZEN:**  Yeah.

10             **THE COURT:**  -- but maybe I'm just mis-remembering

11   what happened at in earlier May conference.  You're reminding

12   me that I already addressed the issue of Dr. Liu.  Did

13   I already address the issue of deposition hours limits, as

14   well?

15             **MR. CRUZEN:**  I don't believe so, and I don't think

16   that that particular issue was at issue.

17             **THE COURT:**  Okay, that piece was left.

18             **MR. CRUZEN:**  There was a lengthy discussion about

19   whether the carriers' witnesses, who were deposed in a prior

20   case, could be deposed again.  I think you concluded, not

21   without good cause.

22             So it makes sense that you have some recollection of

23   discussing depositions.  So unless you have questions about

24   that inventor issue, I'll move on to --

25             **THE COURT:**  No, why don't you turn to the other

1    issue.

2              **MR. CRUZEN:**  Okay.  Well, our position is basically

3    that there should be symmetry between the two parties.  Just as

4    some Adaptix witnesses have been deposed previously, the

5    carriers' witnesses have been deposed, as well.  To the extent

6    that defendants need fewer hours, so does Adaptix.  I represent

7    Amazon.  We weren't a party to any of the prior cases.

8    I didn't represent any other parties in the other cases.  I had

9    no opportunity to ask Adaptix witnesses any questions.

10              Their proposal's 75 hours for the manufacturers.

11   Ours is 150, which is exactly what they proposed for

12   themselves.  That would give me roughly -- and I think there

13   are 10 defendants now in these cases -- 15 hours *pro rata*.  We

14   don't think that's abusive.  We think the 150 limit is

15   sufficient to make sure there's no mischief that goes on, and

16   will be efficient.

17              I mean, to the extent testimony which has already

18   been elicited that gets us where we need to be, we're not going

19   to repeat that testimony just to harass Adaptix witnesses.  But

20   we think there should be symmetry between the parties.

21              If anything, we need more time because we're

22   coordinating among many different sets of lawyers.

23              **THE COURT:**  Can I ask you, based on your take on

24   what's happened in the wave one cases thus far, I mean, how

25   many additional -- how many Adaptix employees do you think are

1    really going to be in play here?

2           **MR. CRUZEN:**  They have identified 11 witnesses in

3    their initial disclosures.  I think previously Mr. Ercolini

4    thought that 10 to 12 witnesses would be at issue in the case.

5    I'm relatively new to the case, although I've now graduated to

6    wave two, apparently.  So that's the best knowledge I have on

7    that question.

8           **THE COURT:**  Okay.  Okay, does anybody else want to

9    be heard on the issue of deposition hours?

10          Mr. Gannon, go ahead, sir.

11          **MR. GANNON:**  I just want to address -- my brother

12   had made the statement about Dr. Liu and how we had originally

13   agreed to the 12 hours at the May 16th CMC.  That may have been

14   true; however, the circumstances have changed.  Dr. Liu has sat

15   for two additional days for deposition in the Texas cases.  So

16   he's now sat for at least three days of deposition.

17          **THE COURT:**  Is he set -- let me ask you, Mr. Gannon,

18   is Dr. Liu set for any further deposition in Texas, as far as

19   you know?

20          **MR. GANNON:**  I believe the Huawei and ZTE defendants

21   are looking to take another deposition of him.

22          **THE COURT:**  So he may face even more --

23          **MR. GANNON:**  Additional, exactly.

24          **THE COURT:**  And I take it there's no question that

25   those transcripts, to the extent further deposition is taken,

1    will be fair game as well?

2         **MR. GANNON:**  We have no objection to that, your

3    Honor.

4         **THE COURT:**  Okay.

5         **MR. GANNON:**  The final point with him, he's no

6    longer in this country.  He's in Shanghai, China.  So it's --

7    it would be an inconvenience for him to --

8         **THE COURT:**  Has he been traveling here to the U.S.

9    for his depositions?

10        **MR. GANNON:**  Yes and no.  Originally, no, he was at

11   the University of Washington, but for his second round of

12   depositions, he had to fly from Shanghai.

13        **THE COURT:**  Okay.  All right, thank you.

14        **MR. KUBEHL:**  Your Honor?

15        **THE COURT:**  Yes, go ahead.

16        **MR. KUBEHL:**  Just briefly, for T-Mobile?

17        **THE COURT:**  Go ahead, Mr. Kubehl, yeah.

18        **MR. KUBEHL:**  T-Mobile was a defendant in the base

19   station side of the cases, but this and the round two Texas

20   cases are the first time that T-Mobile has been a handset

21   patent defendant.

22        The proposal by the plaintiff is that T-Mobile be

23   barred across the board from taking any depositions, both of

24   Adaptix and the inventors.  They have not had a chance to take

25   a deposition on these patents, so we'd ask that that be

1    considered.

2              There's also a suggestion by plaintiff that in any

3    other cases that a carrier defendant is a party, that Adaptix

4    could use for all purposes any transcripts of depositions from

5    those cases, and T-Mobile's participating in the base station

6    side of the cases involves information that's subject to a

7    protective order in that case, and we would ask that the Court

8    not grant that relief and swing open the doors of the

9    protective order in the base station case into this case.

10             **THE COURT:**  Could you just elaborate on that last

11   point, Mr. Kubehl, make sure I understand what's going on?

12             **MR. KUBEHL:**  Sure.  So T-Mobile produced information

13   and gave deposition testimony relevant to third party

14   information that's relevant in the base station cases, subject

15   to protective order in those cases.  That protective order is

16   not the same protective order as this case.  And so we'd ask

17   that the Court deny the request that any testimony given in any

18   proceeding that T-Mobile has been a part of is --

19             **THE COURT:**  Ah, so you're saying it's not so much

20   T-Mobile's confidential information that's the issue, it's

21   third party CI that was produced in the Texas cases.

22             **MR. KUBEHL:**  That would be an issue.

23             **THE COURT:**  Okay, I think I understand it.

24             All right, anything else on depositions?

25             **MR. McGRORY:**  Yes, your Honor.  Sprint is situated

1    similar to T-Mobile, in that it has been in the base station

2    cases in Texas, it is in later filed Amtech (phonetic) cases,

3    but it hasn't participated in any deposition of any inventor

4    with respect to the patents that are at issue in this case.

5             **THE COURT:**  Okay.

6             **MR. HAYES:**  Judge, can I have a --

7             **THE COURT:**  Yes, go ahead, Mr. Hayes.

8             **MR. HAYES:**  Thank you, Judge.  With respect to the

9    use of depositions -- and also this would include something

10   that will come down the road in front of you vis-a-vis

11   documents, because I know you've ruled about the protective

12   order and the use of some of these documents in Sprint -- we

13   intend to file a motion to compel these carriers to produce

14   these documents that they say we used in violation of the

15   protective order, simply because they were obligated to produce

16   those documents in the case in Texas before it got transferred

17   here, and they're obligated to produce them here, because it

18   went to the document request.

19             And the reason, so that you've got a handle on this,

20   is one of the key -- one issue is whether this FSS system,

21   Frequency Selective System, is or is not a big deal, and we

22   think it is, and we think it's worth a lot of bucks, and we

23   think it's a big deal.

24             The documents that they marked confidential, and

25   don't want anybody to be using, say it's the brains of the

1   system.  Well, that obviously is a relevant document that

2   should have been produced here, and as we all know, in Texas,

3   they don't do document requests.  We should have had it.  So

4   you can't take the key admission that "I did it," put a

5   different Bates number on it, and off we go.

6           Same thing with these depositions, is that somehow

7   we're going to have to figure out that if, you know, AT&T in a

8   base station case testifies, yes, this the brains and the heart

9   of the system, he can't run up the stairs, hop on that stand

10  and say exactly the opposite, and then I have a deposition to

11  impeach the person, and they jump up and say, Hayes, you can't

12  use that, that's for violating a protective order, and none of

13  the truth is getting to the jury.

14          So I'm just letting you know that this is a sticky

15  wicket.

16          **THE COURT:**  And I take it a motion will be coming --

17          **MR. HAYES:**  We're going to file -- I've tried to

18  figure out how to resolve it, because -- and I think the

19  simplest way to resolve it is a simple motion to compel that

20  says, A, you should have produced it in Texas, you certainly

21  should have produced it here, and so just produce it, put a

22  different Bates number, and then all that stuff that -- then no

23  one's in violation of anything.  So I'm just telling you,

24  that's probably coming down the road quicker than the train.

25          **THE COURT:**  All right.  Thank you, Mr. Hayes.

1    I look forward to it, and I actually mean that.

2              Let me also just ask, I have your respective

3    positions on RFAs, expert depositions and the like.  Is there

4    anything anybody needs to add to the papers on those issues?

5              If not, what my thought is, on discovery limits, let

6    me go back and compare your proposals, look at that transcript

7    from the May conference.  I want to get this right.  And so

8    rather than hash out some limits on the fly here on the bench,

9    I'll get it figured out and I'll include it in my order so that

10   you have that in hand, and I'll try to get that out as quickly

11   as possible.

12             One other just housekeeping matter in wave two

13   before I just turn to wave three, which is, in the -- I believe

14   in the statement for wave two, the parties had agreed that

15   something like four hours would be required for claim

16   construction.  I'm always heartened at that notion.  Do you

17   really think four hours is going to be enough?  Can you tell me

18   at this point, I mean, without binding anybody or anything, are

19   we talking about a couple more terms or a whole new list of

20   them?

21             What is your sense at this point?

22             **MR. GANNON:**  Your Honor, it's Adaptix's position

23   that all the claim terms at issue have already been construed.

24   We face additional constructions in the second wave of Texas

25   cases, and they've already been construed, again, by Magistrate

1   Judge Craven.

2              We think every term that needs to be construed has

3   already been construed.  It's just that it's a further attempt

4   by the defense to gin up further noninfringement arguments.

5              **THE COURT:**  All right.  Well, who wants to respond

6   to that, Mr. Cruzen?

7              **MR. CRUZEN:**  Your Honor, I think four hours may be

8   realistic.  We do have a number of terms that we proposed in

9   construction that are different from ones considered by the

10   Court previously, that I'm equally optimistic that four hours

11   would provide.

12              **THE COURT:**  Okay, well, I thought I'd just ask, and

13   obviously, you'll have a chance to present your respective

14   arguments.  In the schedule that the parties have jointly

15   proposed at Exhibit A in this wave, I think you have proposed a

16   claim construction hearing on or about May 14th, correct?

17              Mr. Rivera, can you just tell me, does our calendar

18   allow that date?

19              **THE CLERK:**  Yes, your Honor.  Thursday, May 14th is

20   available.

21              **THE COURT:**  Yes, so we're going to specially set

22   that, and because I normally don't hear matters -- civil

23   matters on Thursdays, but in this case, why don't we go ahead

24   and set that for a special hearing.

25              To encourage us all to hold to that four hours that

1    have been suggested, why don't we start at 1:00 o'clock, and

2    see if we can get done before the end of the day.

3              The other date in here, I just wanted -- there are

4    two other dates, actually, I wanted to just speak to this

5    afternoon.  For the hearing on the dispositive motions, you're

6    proposing March 31 of 2016.  That's hard to imagine where

7    you've been thinking about that, but Mr. Rivera, I assume I'm

8    available on the 31st for a hearing?

9              **THE CLERK:**  Your Honor, that date's also a Thursday.

10             **THE COURT:**  Oh, it is a Thursday also, huh?

11             **THE CLERK:**  Yes, your Honor.

12             **THE COURT:**  Well, I'm happy to set it for Thursday,

13   just because I suspect we're going to have multiple motions.

14             **THE CLERK:**  That day is available, your Honor.

15             **THE COURT:**  Okay, so I'll include that in the

16   scheduling order.  The final date, Mr. Rivera -- there are two

17   other dates, just to confirm -- July 25th, 2016, is the Court

18   available for a pretrial conference on that date?

19             **THE CLERK:**  That's a Monday, July 25th, your Honor.

20   Tuesday, July 26 at 10:00 a.m. is also available.

21             **THE COURT:**  Okay.  Let's keep it on Monday, the

22   25th, Mr. Rivera, again assuming we're going to have many

23   issues to resolve.

24             Finally, August 1st, 2016, is the Court available on

25   that date for a trial?

1          THE CLERK:  Yes, your Honor.  Monday, August 1st is

2     available.

3          THE COURT:  Fantastic.  I will now include those

4     dates as you have proposed them.

5          I think that gets through the issues raised in the

6     wave two statement, which brings me to wave three.  Mr. Gannon,

7     did I miss something?

8          MR. GANNON:  Yes, your Honor.

9          THE COURT:  Go ahead.

10          MR. GANNON:  The proposed limits on expert

11     depositions?

12          THE COURT:  I thought I'd suggested that perhaps

13     your statements were enough for me, but if you have something

14     you want to add --

15          MR. GANNON:  No, no, that's fine.

16          THE COURT:  Okay, if you're good with what you

17     wrote, I'm happy.

18          MS. GOLINVEAUX:  Your Honor, if I may, on behalf of

19     Dell --

20          THE COURT:  Of course.

21          MS. GOLINVEAUX:  -- there's one point we wanted to

22     raise, and it's the last bullet point raised on page 9 under

23     the plaintiff's statement regarding depositions.

24          THE COURT:  Go ahead.

25          MS. GOLINVEAUX:  And here, it's been suggested

1    Adaptix be able to use for all purposes transcripts of

2    depositions taken of carrier defendants in any other case

3    brought by Adaptix, and Dell just wants to raise the point that

4    for depositions, we didn't have the opportunity to attend.

5    Without knowing how plaintiff intends to use those depositions,

6    we don't think it's reasonable to have unilaterally free

7    (inaudible).

8            THE COURT:   Okay, so you're opposed to even

9    permitting those transcripts together with giving you the

10   opportunity for further depositions?

11           MS. GOLINVEAUX:   Not necessarily, your Honor, but we

12   wouldn't want to have a blank slate for them to use deposition

13   transcripts without our opportunity to have -- for the earlier

14   depositions that we weren't able to attend.

15           THE COURT:   Okay, so if I understand what you're

16   saying, then, what you're saying is, let's assume we're talking

17   about, I don't know, AT&T, just to pick on someone.  Because

18   Dell wasn't at that deposition, you're saying you should get to

19   ask questions of AT&T.  If you get that opportunity, you're not

20   opposed to permitting the use of the earlier transcript, but

21   you just want to make sure, if that transcript's coming in, you

22   get a shot to ask your own questions.

23           MS. GOLINVEAUX:   That's correct, your Honor.

24           THE COURT:   I got it.  Okay, thank you.  All right,

25   well, I'll address all these issues in my order.

1          Wave three, I assume there is substantial overlap in

2     the set of issues for wave three as with wave two, and so

3     I won't ask you to belabor a lot of these points, but -- well,

4     let me just start with -- let me just start with the schedule,

5     if I could.

6          Again, here I understand that the parties have

7     proposed a schedule that coincides nicely with the schedule for

8     wave two, is that right?  All right.  Done.  I'll take that as

9     a yes, and I appreciate everyone's brevity.

10          And I also understand that there is a set of

11    competing proposals for deposition limits, experts and all

12    that, that is identical to the -- or is it perhaps different?

13          **MR. EISEMAN:**  Your Honor, David Eiseman on behalf of

14    Kyocera.  It's slightly different --

15          **THE COURT:**  Go ahead, Mr. Eiseman.  Tell me what's

16    going on.

17          **MR. EISEMAN:**  -- in that, your Honor, in our case,

18    the wave three cases, there have not been infringement

19    contentions served yet.

20          **THE COURT:**  Right.

21          **MR. EISEMAN:**  And plaintiff has indicated that they

22    intend to, in fact, raise the Mode 3 allegations as a new

23    infringement theory.  And so we're not in the same situation

24    where we have a set of the exact same infringement contentions

25    as in the prior cases.

1          So from defendants' perspective, we've proposed a

2     hundred hours of depositions.  Plaintiffs have said 63 hours.

3     We think a hundred hours is less than the 150 your Honor

4     ordered in wave one, and so we think it's a reasonable number,

5     and we'd ask that you adopt that.

6          **THE COURT:**  Okay.  Are there any other significant

7     differences I ought to be aware of, Mr. Eiseman?

8          **MR. EISEMAN:**  I think, other than that, I think

9     we're pretty much in line with wave two.

10         **THE COURT:**  Okay, all right.  And am I right in

11    understanding, then, that because you are proposing the same

12    date for a *Markman* hearing and for a dispositive motion

13    hearing, that you propose to coordinate with the defendants in

14    wave two for each of those hearings?

15         **MR. EISEMAN:**  We do, your Honor.

16         **THE COURT:**  Okay, fantastic.  I like the sound of

17    that.

18         **MR. REEDER:**  Your Honor, Mike Reeder for HTC.  The

19    other difference, and going off that same point in wave three,

20    because there's no infringement contentions that have been

21    served, Adaptix has proposed a collective maximum of hours for

22    expert reports -- excuse me -- for expert depositions at 10

23    hours.  Without having seen the infringement reports

24    (inaudible) reasons to limit that, and we can just go with the

25    normal proposal of seven hours.

1      **THE COURT:**  Okay, I appreciate that, Mr. Reeder.

2           May I just ask, Mr. Gannon, are the hours and other

3      limits that you're proposing in wave three independent of --

4      I assume they are independent of the limits that you're

5      providing in wave two.

6           In other words, you're providing a certain number of

7      hours in wave two, that's for those defendants.  You're

8      proposing another set of hours for wave three, that's for the

9      wave three defendants.  Is that fair?

10     **MR. GANNON:**  Our preference would be that the cases

11     would be all be aligned, and the one limit would be for all

12     defendants.  I mean, it makes sense, I mean --

13     **THE COURT:**  The hours limits.

14     **MR. GANNON:**  -- the hours limits, and my brother

15     that represents HTC made the point that HTC needs all these

16     hours.  HTC is a defendant in the first round of cases.  Yes,

17     there's additional products at issue in the third round of

18     cases; however, it's the same accused functionality in these

19     new products that are at issue in the third round of cases.

20     **THE COURT:**  Okay.

21     **MR. GANNON:**  So it's...

22     **THE COURT:**  I think I have your position, then.  All

23     right, well, I certainly have your statements to work through

24     some of these details.

25          As to wave three, or frankly, at this point any

1    other wave, are there other issues I've missed That we ought to

2    talk about this afternoon, or this evening?  Wow...

3           **MR. ERCOLINI:**  Your Honor, this is Michael Ercolini

4    for plaintiff Adaptix.

5           **THE COURT:**  Go ahead, Mr. Ercolini, yeah.

6           **MR. ERCOLINI:**  Judge, one other thing to bring to

7    the Court's attention.  I think Sprint had made the statement

8    that Adaptix should be precluded from using deposition

9    transcripts completely as Adaptix litigation, on the basis of

10   the patents-in-suit being different.  However, in their

11   proposal, it's worth noting that Sprint is seeking to preclude

12   Adaptix taking any further depositions of Sprint employees or

13   customers during the third bucket of cases.

14           So I would submit to the Court that that would be

15   inconsistent with their -- with their prior statements

16   regarding the use of deposition transcripts.

17           **THE COURT:**  Okay, Sprint want to respond?

18           **MR. McGRORY:**  Well, your Honor, to the extent that

19   topics for the 30(b)(6) notices are different, obviously we'll

20   work with counsel for Adaptix, but we don't need to have the

21   same deposition taken of the same witness, even though they're

22   different patents.

23           **THE COURT:**  I understand, okay.  All right --

24           **MR. ERCOLINI:**  Your Honor?

25           **THE COURT:**  Yes, go ahead, Mr. Ercolini.

1          **MR. ERCOLINI:** One final issue. It's also worth

2     noting that for the previous carriers that were in the first

3     wave of cases, Verizon and AT&T, we took depositions across all

4     of the cases at once. We think that those transcripts should

5     be usable in this second and third wave of cases, and again, as

6     Mr. Hayes said previously, we think because the patents-in-suit

7     are related and have a technological nexus with the current

8     patents-in-suit, we think that those transcripts should be

9     usable, as well.

10          **THE COURT:** One last question for you, Mr. Ercolini.

11     Since I'm trying to get my head back around the issues in each

12     of these cases, if I remember, at an earlier hearing, perhaps

13     at our very first one, you explained to me that in these cases

14     I'm dealing with the '212 and '748 patents, correct?

15          **MR. ERCOLINI:** That's correct, your Honor.

16          **THE COURT:** And the cases that are in Texas involve

17     those patents, but also involve other patents in the same

18     family, is that right?

19          **MR. ERCOLINI:** That's correct, your Honor.

20          **THE COURT:** Okay, I think I've got it. Well, I'm

21     going to quit while I'm ahead. Are there any other issues

22     I can help you with? Have a good evening. Thank you.

23          Thank you, operator.

24          **TELEPHONE OPERATOR:** You're welcome.

25                                                      <u>6:06 p.m.</u>

---oOo---

1

2

3                     **<u>CERTIFICATE OF TRANSCRIBER</u>**

4

5           I, Leo Mankiewicz, certify that the foregoing is a

6    true and correct transcript, to the best of my ability, of the

7    above pages of the official electronic sound recording provided

8    to me by the U.S. District Court, Northern District of

9    California, of the proceedings taken on the date and time

10   previously stated in the above matter.

11          I further certify that I am neither counsel for,

12   related to, nor employed by any of the parties to the action in

13   which this hearing was taken; and, further, that I am not

14   financially nor otherwise interested in the outcome of the

15   action.

16

17   _____  09/26/2014

18          Signature of Transcriber        Date

19

20

21

22

23

24

25