UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADAPTIX, INC.,<br><br>                    Plaintiff,<br>     v.<br>APPLE, INC., *et al*.,<br><br>                    Defendants. | Case No. 5:13-cv-01776-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 307)** |
| ADAPTIX, INC.,<br><br>                    Plaintiff,<br>     v.<br>APPLE, INC., *et al*.,<br><br>                    Defendants. | Case No. 5:13-cv-01777-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 333)** |
| ADAPTIX, INC.,<br><br>                    Plaintiff,<br>     v.<br>AT&T MOBILITY LLC, *et al*.,<br><br>                    Defendants. | Case No. 5:13-cv-01778-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 302)** |

1
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| ADAPTIX, INC.,<br><br>                    Plaintiff,<br>v.<br>CELLCO PARTNERSHIP *d/b/a* VERIZON WIRELESS, *et al.*,<br><br>                    Defendants. | Case No. 5:13-cv-01844-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 285)** |
| ADAPTIX, INC.,<br><br>                    Plaintiff,<br>v.<br>APPLE, INC., *et al.*,<br><br>                    Defendants. | Case No. 5:13-cv-02023-PSG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(Re: Docket No. 309)** |

In the months leading up to the filing of what became the patents-in-suit, multiple employees of Defendant AT&T Mobility LLC with technical information about a "Project Angel" jumped ship to work at a predecessor-in-interest of Plaintiff Adaptix, Inc.  Curiously, a large number of AT&T confidential emails detailing Project Angel specifications also found their way into Adaptix's files.  Adaptix now brings a motion for partial summary judgment to head off an invalidity challenge based on derivation by AT&T as well as Defendants Apple, Inc., Verizon Wireless and HTC Corporation.  Because there remains a genuine dispute whether Adaptix knew about the specifications of AT&T's Project Angel before Adaptix filed its patent applications, the motion for partial summary judgment is DENIED.

**I.**

Pursuant to Fed. R. Civ. P. 56(a), the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  At the summary judgment stage, the court "does not assess

---

[1] Fed. R. Civ. P. 56(a).

2
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[2] Material facts are those that may affect the outcome of the case.[3] A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.[4]

Patents are presumed valid, a presumption that can only be defeated by clear and convincing evidence.[5] A patent is invalid if the asserted inventors did not in fact invent the invention.[6] "To show derivation, the party asserting invalidity must prove both prior conception of the invention by someone other than the named inventors and communication of that conception to the patentee."[7] "Communication" must include sufficient information to allow someone or ordinary skill in the art to construct and operate the invention.[8] If any element of the claimed invention is not communicated, there can be no derivation.[9]

In August 1999, after nearly four years of development, AT&T began selling services from its Project Angel system.[10] Little over a year later and only months after its own founding, Broadstorm Telecommunications Inc.—Adaptix's predecessor[11]—filed an application for the first of the patents-in-suit.[12]

---

[2] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

[4] *See id.*

[5] *See Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1354 (Fed. Cir. 2010).

[6] *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1313(Fed. Cir. 2011).

[7] *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1576 (Fed. Cir. 1997).

[8] *See Price v. Symsek*, 988 F.2d 1187, 1197 (Fed. Cir. 1993).

[9] *See id.* at 1193.

[10] *See* Case No. 13-01776: Docket No. 332-3 at 10.

[11] For the purpose of this order, both Broadstorm and Adaptix will be referred to as Adaptix.

[12] *See* Case No. 13-01776: Docket No. 332-3 at 1, 12.

From the earliest stages, Adaptix's goals were ambitious—it sought to prototype its technology just nine months after its founding. Though motivated, Hui Liu—one of the company's co-founders—recognized that reaching this goal was futile without additional help.[13] Along with Xiandong Li, another one of Adaptix's co-founders, Liu proposed to strategically hire key Project Angel engineers from AT&T.[14] Adaptix was able to recruit three engineers: Pal Meiyappan, Liang Hong and James Hite.[15] Adaptix began working with Meiyappan just over two months before the patents-in-suit were filed.[16] A few days later, Adaptix hired Hite and subsequently began consulting with Hong.[17] In fact, Hong's consulting relationship with Adaptix began while he was still an employee of AT&T, and he continued in his dual role for months before leaving AT&T.[18] Among the three engineers, Adaptix had—as Liu put it—"pretty much…everything…on [AT&T's] engineering side."[19] It was only after Adaptix began working with these three engineers that it proceeded to file applications for the patents-in-suit.[20]

All three former AT&T employees contributed significant knowledge and expertise to Adaptix, but that was not all. Among these were many internal AT&T email communications authored by Hong as well as several AT&T technical documents related to Project Angel.[21] Adaptix has offered no explanation as to how it came into possession of these files.[22]

---

[13] *See id.* at 6.

[14] *See id.*

[15] *See id.* at 7.

[16] *See id.*

[17] *See id.* at 11.

[18] *See id.* at 8.

[19] *Id.* at 9.

[20] *See id.* at 11, 12.

[21] *See id.* at 10.

[22] *See id.*

4
Case Nos.: 5:13-cv-01776; -01777; -01778; -01844; -02023
ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Adaptix now alleges that Defendants, including AT&T, are infringing its patents. Among its defenses, Defendants challenge the validity of the patents as having been derived from AT&T sources.

## II.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338. The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).

## III.

In its motion for partial summary judgment, Adaptix hangs its hat on the proposition that the details of Project Angel—in particular, its specifications—were not communicated to the named inventors prior to their conception of the patents-in-suit. No communication of the specifications, Adaptix argues, thus no derivation. But at this stage the court need not find that there was in fact communication of the Project Angel specifications. Instead the court must only determine whether—making all inferences in Defendants' favor—there is a genuine issue of material fact as to whether that communication occurred.[23] Because the court is persuaded that there surely is such an issue, partial summary judgment in favor of Adaptix is unwarranted.

*First*, the record is largely undisputed that (1) Adaptix hired AT&T engineers who were employed at AT&T during the conception of Project Angel; (2) Adaptix obtained AT&T confidential information related from those engineers about early iterations of Project Angel; (3) Adaptix received this confidential information prior to filing the patents-in-suit; and (4) the confidential information bears a certain resemblance to the specifications and ultimately the patents-in-suit. And while the evidence supporting these contentions may not ultimately persuade the court that the disputed Project Angel information was in fact communicated to Adaptix prior to the filing of the patents-in-suit, it certainly provides a basis upon which a jury could find that communication and thus derivation took place.

---

[23] *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

*Second,* Adaptix produced over one thousand Project Angel-related emails between AT&T and inventor Hong. Defendants may not be able to show exactly how Adaptix came into possession of these files. But given that Adaptix had been in contact with Hong by October of the same year as the applications were filed and even offered Hong a job at that point, it would be reasonable for a jury to view this as circumstantial evidence that Hong handed the emails over to Adaptix in conjunction with the development of the patents-in-suit.[24]

*Third*, Adaptix hired Meiyappan away from AT&T a mere two months before filing its first patent application. With the hiring of Meiyappan, along with Hong and Hite from AT&T, Adaptix believed that it would "pretty much know everything . . . on [AT&T's] engineering side."[25] Even Adaptix's own expert conceded that the named inventors of the patents-in-suit had access to AT&T's confidential Project Angel information prior to filing their patent applications.[26]

In sum, while this evidence is not dispositive of the derivation claim, it does present a genuine issue of material fact suitable for determination by a jury.

**IV.**

Adaptix's motion for partial summary judgment is DENIED.

---

[24] *See Robert Bosch, LLC v. Pylon MFG. Corp.*, 700 F. Supp. 2d 625, 642-43 (D. Del. 2010) (denying a motion for summary judgment of no invalidity for derivation where "the inference that [the putative inventor] conceived of the solutions depicted by his notes and communicated them to [the named inventors] at the September meeting [was] supported by circumstantial evidence."); *Transocean Offshore Deepwater Drilling, Inc. v. Global Santa Fe Corp.*, 443 F. Supp. 2d 836, 863-64 (S.D. Tex. 2006) (denying motion for summary judgment of no invalidity of derivation on the grounds of communication where deposition testimony and documents tended to show patentee received claimed inventive concepts from putative inventor).

[25] Case No. 13-01776: Docket No. 332-8 at 352:5-18.

[26] *See* Case No. 13-01776: Docket No. 333-36 at 198:3-6:
> Q: The knowledge and the people from AT&T was there at Broadstorm before the inventions on the patents-in-suit, correct?
> A: That is correct.

**SO ORDERED.**

Dated: January 15, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge